# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD DEEDS, | 3:11-cv-00351-LRH-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| J. BRUCE BANNISTER, *et al.*, | |
| Defendants. | January 7, 2013 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' partial motion to dismiss plaintiff's revised second amended complaint (#36).[1] Plaintiff opposed (#48) and defendants replied (#50). The court has thoroughly reviewed the record and recommends that defendants' partial motion to dismiss plaintiff's second amended complaint (#36) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Richard Deeds ("plaintiff"), a *pro se* inmate, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#30, p. 2). On June 21, 2012, plaintiff filed a revised second amended complaint (#30) against defendants Jim Benedetti, Warden—NNCC; James Cox, Director—NDOC; Karen Gedney, physician; Damon Haycock, Administrative Services Officer; Scott Kahler, Food Manager—NNCC; Nevada Board of State Prison Commissioners; Nevada Department of Corrections; Jack Palmer,

---
[1] Refers to the court's docket numbers.

Warden—NNCC; John Peery, Director of Nursing—NNCC; Howard Skolnik, Director—NDOC; and the State of Nevada (#30, pp. 4-6). In his revised second amended complaint, plaintiff alleges that defendants Gedney, Benedetti, Palmer, Peery, Haycock, Kahler, and Skolnik violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101, *et. seq.* (Count I); and that defendant Peery violated the First Amendment by retaliating against plaintiff for filing prison grievances (Count II). *Id.* at 8-11, 12.

To fully understand the issues before the court, it is necessary to recite the procedural history of this case.

A. <u>Original Complaint (#2)</u>

On May 17, 2011, plaintiff filed his original complaint (#2) pursuant to 42 U.S.C. § 1983. Plaintiff's original complaint contained two claims: an Eighth Amendment medical claim (Count I) and an ADA claim (Count II). *Id.* The court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed plaintiff's Eighth Amendment medical claim to proceed against defendants Gedney, Kahler, Benedetti, Palmer and Cox (#6, p. 7). The court dismissed plaintiff's ADA claim on the grounds that "plaintiff does not set forth factual allegations to show that he has been denied the benefits of services due to his disability, but instead attempts to re-frame his Eighth Amendment medical allegations as ADA claims." *Id.* at 6.

B. <u>First Amended Complaint (#24-1)</u>

On February 6, 2012, the court granted plaintiff's motion for leave to file a first amended complaint (#23). In Plaintiff's first amended complaint (#24-1), plaintiff abandoned his Eighth Amendment medical claim, even though the court had permitted this claim to proceed (#6, p. 7).[2]

---

[2] Plaintiff admits that he intentionally abandoned his Eighth Amendment medical claim in his motion for leave to file a third amended complaint. *See* #47, p. 2 ("On or about December 12, 2011, I filed a motion to file the First Amended Complaint, wherein I dispensed with the 8th Amendment claim, opting instead to proceed under Title II of the ADA on

Plaintiff also attempted to revive the earlier dismissed ADA claim (Count I)[3] and added a First Amendment retaliation claim against defendants Peery and Cox (Count II). *Id.* at 6-10.

### C. Second Amended Complaint (#30)

On June 15, 2012, the court granted plaintiff's motion for leave to file a second amended complaint (#31). In Plaintiff's revised second amended complaint (#30), plaintiff further defined his previously dismissed ADA claim (Count I) and dropped defendant Cox from his First Amendment retaliation claim (Count II).

### D. Defendants' Partial Motion to Dismiss (#36)

Defendants have now filed a partial motion to dismiss plaintiff's revised second amended complaint (#36). Defendants ask the court to dismiss plaintiff's ADA claim (Count I) on the grounds that: (1) individuals are not proper defendants under the ADA (#36, pp. 4-5); and (2) the benefits to which plaintiff claims entitlement are *for* his disability; thus, plaintiff cannot reasonably characterize his claims as denial of any benefit *by reason of* his disability, which is required to prevail under the ADA (#36, pp. 5-7).

Plaintiff opposes defendants' motion, arguing that: (1) claims against individuals in their official capacities are permitted under Title II of the ADA (#48, pp. 3-5); (2) plaintiff has been denied everything except "basic health care" "by reason of" his disabilities (#48, p. 7); and (3) plaintiff has submitted a motion for leave to file a third amended complaint (#48, p. 8).

Defendants reply that: (1) plaintiff's argument regarding abrogation of sovereign immunity is not relevant to defendants' partial motion to dismiss (#50, p. 2); (2) plaintiff's argument that individuals are proper defendants under Title II of the ADA is not responsive to defendants' partial

---

the grounds of intentional discrimination.").
[3] The court notes that plaintiff sporadically cited the Eighth and Fourteenth Amendments within his ADA claim (#24-1, pp. 7-8).

motion to dismiss (#50, p. 3); and (3) plaintiff's claims in Count I are defective because they are medical treatment claims—not ADA discrimination claims (#50, p. 4).

As a preliminary matter, the court notes that plaintiff's revised second amended complaint (#30) consists of two claims: an ADA claim (Count I) and a First Amendment retaliation claim against defendant Peery (Count II). Although this court previously recognized that plaintiff's original complaint contained facts supporting an Eighth Amendment medical claim, plaintiff has since abandoned this claim. Thus, the court finds it is only appropriate to review Count I of plaintiff's revised second amended complaint as it was plead, i.e., as an ADA claim. *See O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) ("[C]ourts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action.") "[T]he party who brings a suit is master to decide what law he will rely upon." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 n. 7 (1987) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)).

In plaintiff's revised second amended complaint, plaintiff alleges the following: in 1999, part of plaintiff's digestive tract was removed (#30, p. 8). Thereafter, plaintiff suffered from Short Bowel Syndrome, which caused him to have "so many bowel movements [that he] practically lived sitting atop a toilet." *Id.* Plaintiff also suffers from Crohn's disease. *Id.* Plaintiff contends that as an inmate within the NDOC, he is qualified to receive certain benefits, such as:

> health care services provided in [a] timely manner including referral to a gastroenterologist, diagnostic testing not available inside prison itself, and further attending to nursing, hygiene, dietary services, environmental conditions, furniture, favors, and other matters not expressly provided for; appropriate housing and healthful diet; housing within the NNCC Regional Medical Facility; access to a toilet; medical diet; medical restrictions appropriate to my physical limitations; exercise; parole.

*Id.*

Plaintiff alleges that prior to May 17, 2011, defendant Gedney denied him adequate medical care. *Id.* Specifically, plaintiff alleges that defendant Gedney refused to refer plaintiff to a gastroenterologist; failed to order diagnostic testing to examine plaintiff's remaining bowel; prescribed Cholestyramine despite knowing that this medication was ineffective; prescribed Pentasa for bowel inflammation despite knowing that plaintiff does not have inflammatory bowel disease; denied plaintiff the timely receipt of prescribed medication, access to a toilet, a nutritionally balanced meal plan, and an adequate mattress; forced plaintiff to take twenty-four hours worth of painkilling narcotics within a twelve hour period; and refused to order medical restrictions appropriate to plaintiff's medical condition, i.e., refused to transfer plaintiff to a single-cell unit. *Id.* at 9-10.

Plaintiff also alleges that defendant Benedetti denied him access to a toilet; scheduled breakfast before plaintiff received his daily medication, requiring plaintiff to buy or illicitly obtain his own food; and refused to transfer plaintiff to a single-cell unit where he could receive timely medication and meals. *Id.* at 10. Plaintiff asserts that when defendant Palmer replaced defendant Benedetti as the warden of NNCC, defendant Palmer's only response was that, "emergency medical care would be available." *Id.* Plaintiff further alleges that defendant Peery denied him the timely delivery of codeine to control plaintiff's Short Bowel Syndrome; and that defendants Haycock and Kahler scheduled meal times without regard for plaintiff's pill call. *Id.*

Finally, plaintiff alleges that he was denied access to an administrative remedy when plaintiff submitted an unidentified grievance regarding his medical care that was not processed properly. *Id.* at 11.

The court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any

doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Legal Standards

#### 1. Motion to Dismiss

"A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and citation omitted). The "plausibility standard" does not impose a "probability requirement," rather, it requires a complaint to contain "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court employs a two-pronged approach. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555-56). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.* at 678. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679. In other words, for the nonmovant to succeed, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

*Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted). Thus, a complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).

A *pro se* plaintiff's complaint must be construed liberally and can only be dismissed with prejudice where it appears certain that the plaintiff would not be entitled to relief. *See Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996). Although allegations in a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by a lawyer, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

**B.     Analysis**

   **1.   Count I—Plaintiff's ADA claim**

Title II of the Americans with Disabilities Act ("ADA") provides that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he is a person with a disability; (2) that he is otherwise qualified; and that the defendants' actions either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his disability. *See Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1996).

In *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209-210 (1998), the Supreme Court recognized that the ADA applies to state prisons. "Although incarceration itself is hardly a 'program' or 'activity' to which a disabled person might wish access, mental health services and

other activities or services undertaken by law enforcement and provided by correctional facilities to those incarcerated are services, programs, or activities of a public entity within the meaning of the ADA." *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (internal quotations and citation omitted). Inmates must allege that they have been denied the benefits of the services, programs, or activities of the prison, or have been subjected to discrimination, by reason of their alleged disability. *See Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998).

The Ninth Circuit has found that "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . The ADA does not create a remedy for medical malpractice.")); *see also Marlor v. Madison County Idaho*, 50 Fed.Appx. 872, 874 (9th Cir. 2002) ("inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld *by reason* of a disability.").[4]

In addition, other circuits have found that the ADA does not create a federal cause of action for prisoners challenging the medical treatment provided for their underlying disabilities. *See Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005); *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 121-22 (7th Cir. 1997). The above cases suggest that the inapplicability of the ADA to medical decisions lies in the inability to reconcile the essential elements of an ADA claim with the inherent issues in providing medical treatment. The

---

[4] The court cites *Marlor* in compliance with the rules of this circuit. *See* Ninth Circuit Rule 36-3(c)(ii) ("[Unpublished dispositions issued before January 1, 2007] may be cited to this Court or by any other courts in the circuit for factual purposes, such as . . . the existence of a related case.").

concern is that such a claim simply makes an end run around the Eighth Amendment. *See Bryant*, 84 F.3d at 249 ("[C]ourts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners. We would be exceedingly surprised to discover that Congress had made an end run around these decisions in the [ADA].").

For example, under the ADA, a plaintiff is required to demonstrate that he was "otherwise qualified" for the benefits sought and that he was denied those benefits "solely by reason of disability." *See Fitzgerald*, 403 F.3d at 1144. As the Tenth Circuit noted:

> Such a plaintiff must prove that he or she was discriminatorily denied medical treatment because of the [handicap] and, at the same time, must prove that, in spite of the [handicap], he or she was "otherwise qualified" to receive the denied medical treatment. Ordinarily, however, if such a person were not so handicapped, he or she would not need the medical treatment and thus would not "otherwise qualify" for the treatment.

*Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992). "[T]he term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.'" *Grzan*, 104 F.3d at 121 (quoting *United States v. Univ. Hosp., State University of New York at Stony Brook*, 729 F.2d 144, 156 (2nd Cir. 1984)). "[W]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was discriminatory." *Id.*

District courts within this circuit have also underscored that the ADA affords disabled inmates legal rights regarding access to programs and activities enjoyed by all—not a general federal cause of action for challenging the medical treatment of their underlying disabilities. *See e.g., Mahoney v. Hammond*, 2010 WL 2720759, at *2 (E.D.Wash. June 15, 2010) ("[T]reatment, or alleged lack of medical treatment for Plaintiff's [underlying medical condition] does not provide a basis upon which to impose liability under the ADA."); *Copelton v. Correctional Corp. of Am.*, 2009

WL 4063907, at *6 (D.Mont. Nov. 23, 2009) (same); *Sartain v. Myers*, 2008 WL 731046, at *9 (C.D.Cal. Mar. 13, 2008) (same); *Johnson v. Yates*, 2008 WL 544573, at *3 (E.D.Cal. Feb. 26, 2008) (same).

Here, plaintiff asserts that defendant Gedney refused to refer plaintiff to a gastroenterologist; failed to order diagnostic testing; prescribed improper medication; forced plaintiff to take excessive doses of painkilling narcotics; denied plaintiff access to a toilet, a nutritionally balanced meal plan, and an adequate mattress; and refused to order medical restrictions appropriate to plaintiff's medical condition (#30, pp. 8-10). Plaintiff also asserts that defendants Benedetti, Peery, Haycock and Kahler refused to accommodate plaintiff's medical needs, and that defendant Palmer acquiesced in the inadequate treatment by stating, "emergency medical care would be available." *Id.* at 10.

Although plaintiff attempts to frame his claims so that they fall within the ADA's purview, it is apparent that plaintiff's claims sound in medical negligence. Defendants' medical treatment decisions are not an appropriate basis upon which to predicate an ADA claim, and plaintiff has not alleged any facts to support a claim that he was subjected to intentional discrimination by reason of his disability or excluded from participation in any prison program or activity. In other words, plaintiff's claims center around the adequacy of defendants' medical care and medical decisions, and do not concern discriminatory denial of services, programs, or activities. *Compare Calloway v. Contra Costa County Jail Correctional Officers*, 2007 WL 134581, at *34 (N.D.Cal. Jan. 16, 2007) ("The gravamen of Plaintiff's ADA and RA claim is that as a result of Defendants' failure to deliver adequate medical care to him, he was denied the opportunity to engage in regular prison life, because he was sick . . . [T]he Court is not persuaded that this is an actionable ADA/RA claim . . . [T]he benefits and services that Plaintiff wished to receive are *for* his disability; he does not, in any real sense, allege that he was denied benefits and services *because of* his disability.").

In Count I, plaintiff merely alleges a difference of opinion regarding proper medical treatment for plaintiff's Short Bowel Syndrome—not discrimination under the ADA. Accordingly, the court recommends that defendants' partial motion to dismiss plaintiff's revised second amended complaint (#36) be granted, and that Count I of plaintiff's revised second amended complaint (#30, pp. 8-11) be dismissed with prejudice.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff does not have an actionable claim under the ADA. Therefore, the court recommends that defendants' partial motion to dismiss plaintiff's revised second amended complaint (#36) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' partial motion to dismiss plaintiff's second amended complaint (#36) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's ADA claim, i.e., Count I of plaintiff's revised second amended complaint (#30, pp. 8-11), be **DISMISSED with prejudice**.

**IT IS FURTHER RECOMMENDED** that plaintiff's First Amendment retaliation claim, i.e., Count II of plaintiff's revised second amended complaint (#30, p. 12) proceed as the only claim remaining in this litigation.

**DATED:** January 7, 2013.

_____
UNITED STATES MAGISTRATE JUDGE